# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF OKLAHOMA

CYNTHIA R. MASSEY, )
)
Plaintiff, )
)
v. ) Case No. CIV-07-398-FHS
)
MICHAEL J. ASTRUE, )
Commissioner of Social )
Security Administration, )
)
Defendant. )

## REPORT AND RECOMMENDATION

Plaintiff Cynthia R. Massey (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Claimant's application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, it is the recommendation of the undersigned that the Commissioner's decision be REVERSED and REMANDED for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or

impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. §423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See*, 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. <u>Hawkins v. Chater</u>, 113 F.3d 1162, 1164 (10th Cir. 1997)(citation omitted). The term "substantial

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant - taking into account his age, education, work experience, and RFC - can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally*, <u>Williams v. Bowen</u>, 844 F.2d 748, 750-51 (10th Cir. 1988).

evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. Casias v. Secretary of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951); *see also*, Casias, 933 F.2d at 800-01.

### Claimant's Background

Claimant was born on December 8, 1964 and was 42 years old at the time of the ALJ's decision. Claimant received her GED. Claimant has worked in the past as a factory assembler, medical records clerk, cashier, and tax preparer. Claimant alleges an inability to work beginning October 13, 2004 due to post lumbar spine surgery with fusion, insulin dependent diabetes mellitus, and obesity.

### Procedural History

On November 16, 2004, Claimant protectively filed for disability insurance benefits under Title II (42 U.S.C. § 401, et

*seq*.) and for supplemental security income under Title XVI (42 U.S.C. § 1381, *et seq*.) of the Social Security Act. Claimant's application was denied initially and upon reconsideration. On March 9, 2007, a hearing was held before ALJ Lantz McClain in Sallisaw, Oklahoma. By decision dated May 24, 2007, the ALJ found that Claimant was not disabled. On September 24, 2007, the Appeals Council declined to review the ALJ's decision. Thus, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

### Decision of the Administrative Law Judge

The ALJ made his decision at step four of the sequential evaluation. He determined that while certain of Claimant's medical conditions were severe, Claimant did not meet a listing and retained the residual functional capacity to perform her past relevant work as a tax preparer.

### Errors Alleged for Review

Claimant asserts the ALJ committed error in: (1) failing to incorporate all of her impairments in his decision; (2) incorrectly assessing Claimant's residual functional capacity; and (3) improperly determining Claimant can return to her past relevant work as a tax preparer.

### The ALJ's Evaluation of Claimant's Impairments

Claimant asserts the ALJ failed to find her diabetic neuropathy as a severe impairment at step two of the sequential

4

evaluation. The medical record supports the ALJ's finding concerning Claimant's other impairments. Namely, Claimant experienced back pain as early as 1998, culminating in radiculopathy at L5 S1. (Tr. 212). On August 12, 2004, Claimant was diagnosed by Dr. Harold Blankenship with type 2 diabetes mellitus, mixed hyperlipidemia, essential hypertension, obesity, tobacco abuse, diabetic neuropathy, and hematuria. (Tr. 117).

On October 13, 2004, Claimant returned to Dr. Blankenship complaining of continued pain in her hands, feet, and back with leg cramps. Claimant was diagnosed with diabetes, diabetes nephropathy, neuropathy, hyperlipidemia, and lumbar radiculopathy. (Tr. 113). Claimant had a CT scan performed which revealed degenerative disc disease at L5-S1 with bilateral neuroforamina narrowing, and a broad-based disc bulge present at L4-5 with thecal sac effacement without evidence of neuroforamina narrowing. (Tr. 112).

An MRI of Claimant's lumbar spine revealed mild facet arthropathy at L3-4 with disc dessication at L4-5 with a small central herniated nucleus pulposis abutting the L5 nerve root, bilateral facet arthropathy, and spondylotic protrusions leading to mild to moderate foraminal stenosis with abutment of the L-4 nerve roots. At L5-S1, disc dessication was present with moderate loss of disc height and vacuum disc phenomenon or disc calcification. Spondylotic protrusion mildly effacing the S1 nerve root, moderate

5

facet arthropathy with moderate narrowing of the bilateral neuroforamina and mild neural effacement of the L5 nerve root. (Tr. 109). Claimant was referred to a neurosurgeon. (Tr. 108).

On December 3, 2004, Claimant was attended by Dr. Armen Marouk, a neurosurgeon. Claimant reported low back pain, numbness in her feet and legs, tingling in her feet, and weakness in her legs, with her right leg worse than her left. (Tr. 171). Dr. Marouk diagnosed Claimant with a ruptured disc at L5-S1 and motor weakness, which Dr. Marouk feared might be caused by peripheral vascular disease or other nerve disease. (Tr. 172).

On January 27, 2005, Claimant underwent surgery with Dr. Marouk. He performed an L4, L5, and partial S1 decompressive laminectomy, medial facetectomy, foraminotomy, and diskectomy. Dr. Marouk noted scar tissue at both levels with compressed nerve roots. (Tr. 141). Dr. Randall Hendricks performed the bone graft and fusion portion of the surgery and inserted a bone stimulator. (Tr. 142). On February 9, 2005, Claimant again saw Dr. Hendricks. He ordered Claimant to wear a brace and gradually increase her activity. (Tr. 165).

On March 18, 2005, Claimant presented to Dr. Marouk, complaining of donor site soreness and dysesthesias of the right leg. Dr. Marouk determined Claimant had paresis of both calf functions and could not raise up on her toes. He recommended continuation of the use of the brace with exercise. (Tr. 169).

6

On April 16, 2005, Dr. Ravinder Kurella performed a consultative examination of Claimant. Claimant reported back and leg pain, foot drop on the right side and numbness in her right thigh. She rated her pain as 7 out of 10. She reported numbness, tingling, and squeezing pain in her toes. Claimant stated she experienced difficulty with her grip and had tingling and numbness in the tips of her fingers. Claimant reported a sharp pain in her right foot, especially in her big toe. (Tr. 173). Dr. Kurella noted a significant history of blood pressure problems, status post two surgeries on Claimant's back, constant back pain, and significant range of motion restrictions in her back. (Tr. 175). He found Claimant had full range of motion in her neck, as well as her knee and ankle joints, shoulder, elbow and wrist joints. She had full range of motion of bilateral hip joints associated with pain and internal and external rotation of the right hip. Claimant's straight leg raising test was negative on both sides sitting and positive on both sides lying down. Dorsiflexion of the great toe and dorsi inversion of the foot were weak on both sides. Deep tendon reflexes were normal. Tenderness was noted by Dr. Kurella in the lumbar region associated with muscle spasms. Claimant's gait was normal but she was unable to do either heel walking or toe walking secondary to back pain. Id.

On May 24, 2005, Claimant was attended by Dr. J. Scott Clark for treatment of hypertension, high cholesterol, and diabetes.

7

(Tr. 201). On a return visit on November 15, 2005, Claimant complained of back pain in the mid-back and lumbar regions with pain radiating to her right leg. She reported problems associated with her diabetes, including blurred vision, leg cramps, and peripheral neuropathy, manifested by numbness and burning. (Tr. 196). Dr. Clark diagnosed Claimant with low back pain, HTN, hypercholesterolemia, type 2 diabetes mellitus, and lower extremity neuropathy. (Tr. 197).

On November 27, 2006, Claimant saw Dr. Lance L. Hamilton. Dr. Hamilton found Claimant's gait, motor, and sensory to be poor. He diagnosed Claimant with neuropathy and increased her medication. (Tr. 216).

On February 19, 2007, Dr. Hamilton completed a Physical Residual Functional Capacity Evaluation form with regard to Claimant. He found Claimant could sit 15-20 minutes at one time in an eight hour workday, stand 5-10 minutes, and walk 5-10 minutes. He also determined the total amount Claimant could sit in an eight hour day to be 4 hours, stand for 30 minutes, and walk for 30 minutes. He found Claimant could lift and carry. 6-10 pounds occasionally. (Tr. 227). Dr. Hamilton found limitations in Claimant's use of her lower extremities. He states on the form that Claimant could rarely push/pull with her upper extremities and never work in extended position, work above shoulder level, or work overhead. He states she could occasionally reach, grasp, and

finger. Claimant was found to be capable of occasionally bending, squatting, crawling, stooping, crouching, kneeling. (Tr. 228).

Dr. Hamilton concludes that

> Patient suffers from severe and debilitating back and leg pain, including foot drop, which is both real and chronic, and essentially uncontrollable. She cannot be on her feet or even sit for as much as six hours out of an eight hour day, but must lie down or recline for most of the time. It's my best medical judgement that she would not be able to perform event the most sedentary of work. I doubt that she will significantly improve.

(Tr. 230).

Claimant testified she quit working on the advice of her doctor. She experiences back pain as well as pain in her legs, arms, hands, and feet. Her foot drop makes her fall regularly and her foot tends to catch on things. (Tr. 257, 260). Claimant spends much of her day lying down or sitting in a recliner. Her children do much of the household work. (Tr. 261). Claimant estimates she can sit in a straight chair for ten minutes and stand for five minutes. (Tr. 264).

In his decision, the ALJ found Claimant suffers from the severe impairments of status post lumbar spine surgery with fusion, insulin dependent diabetes mellitus, and obesity. (Tr. 15). Claimant contends her diabetic neuropathy constitutes an additional severe impairment which the ALJ should have considered in formulating his opinion. Determination of a claimant's impairments is accomplished at step two of the sequential evaluation. Claimant's neuropathy is a direct consequence of Claimant's

9

diabetes mellitus, which the ALJ found to be a severe impairment. Indeed, the ALJ considered the "numbness and tingling in her toes and sharp pain in her right foot" associated with Claimant's diabetes in his assessment. This Court cannot find the ALJ failed to consider Claimant's neuropathy at step two of the evaluation as a part of his finding that Claimant's diabetes mellitus constituted a severe impairment.

**RFC Evaluation**

In this same regard, Claimant next asserts the ALJ should have considered her neuropathy in assessing her RFC. This Court agrees that Drs. Hamilton, Scott, and Blankenship all found Claimant diagnosed Claimant with neuropathy and noted the effect of that diagnosis upon her movements. Claimant specifically questions the ALJ's rejection of Dr. Hamilton's RFC assessment and the limitations upon Claimant's ability to work reflected in the form he completed.

It is not contested in the filings that Dr. Hamilton constituted Claimant's treating physician. It is well-established that any time an ALJ rejects the opinion of a treating physician or fails to give it controlling weight, he must provide substantiation for that rejection. An ALJ is required to give the opinion of a treating physician controlling weight if it is both: (1) "well-supported by medically acceptable clinical and laboratory diagnostic techniques"; and (2) "consistent with other substantial

evidence in the record." Watkins v. Barnhart, 350 F.3d 1297, 1300 (10th Cir. 2003). (quotation omitted). "[I]f the opinion is deficient in either of these respects, then it is not entitled to controlling weight." Id.

Even if a treating physician's opinion is not entitled to controlling weight, "[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527." Id. (quotation omitted). The factors reference in that section are: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion. Id. at 1300-01 (quotation omitted). After considering these factors, the ALJ must "give good reasons" for the weight he ultimately assigns the opinion. 20 C.F.R. § 404.1527(d)(2); Robinson v. Barnhart, 366 F.3d 1078, 1082 (10th Cir. 2004)(citations omitted). Any such findings must be "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical

opinions and the reason for that weight." Id. "Finally, if the ALJ rejects the opinion completely, he must then give specific, legitimate reasons for doing so." Watkins, 350 F.3d at 1301 (quotations omitted).

In his decision, the ALJ recognized Dr. Hamilton's examination and findings from Claimant's November 27, 2006 visit, including the findings of Claimant's poor gait and sensory. He also noted the completion of the physical RFC evaluation form by Dr. Hamilton. He then set out the boilerplate language typically used to address expert opinions in stating

> With respect to giving controlling weight to treating source medical opinions, SSR 96-2p states, in pertinent part, that an adjudicator must find that the treating source's medical opinion is "well-supported" by "medically acceptable" clinical and laboratory diagnostic techniques. The adjudicator cannot decide a case in reliance on a medical opinion without some reasonable support for the opinion. Even if well-supported by medically acceptable clinical and laboratory diagnostic techniques, the treating source's medical opinion also must be "not inconsistent" with the other "substantial evidence" in the individual's case record.

(Tr. 20).

The ALJ then turned to the specific findings of Dr. Hamilton, pointing out (1) Claimant testified as to grip problems, which Dr. Hamilton also found, but "his records do not reflect this"; (2) Dr. Hamilton found significant limitations in Claimant's reaching and upper extremity movements which were "not reflected anywhere else in the record; and (3) Dr. Hamilton found Claimant had mental restrictions "not reflected anywhere in the record" and if such

12

limitations did exist, the ALJ diagnoses that Claimant "would have been referred for counseling or therapy." The ALJ concludes that Dr. Hamilton's opinions are not consistent with Claimant's statements or his treatment records and are, therefore, afforded "very little weight." Id.

The ALJ improperly rejected Dr. Hamilton's entire opinion, including his restrictions upon Claimant's ability to sit, stand, and walk which were wholly unrelated to the allegedly unsupported findings concerning her mental restrictions and upper body limitations. The ALJ must consider all of the treating physician's opinions with regard to each restriction cited and not merely reject the totality of his findings by citing to certain. Soc. Sec. R. 96-5p. On remand, the ALJ shall consider each of Dr. Hamilton's restrictions, the weight he affords the opinion of the treating physician on each restriction, and the effect upon Claimant's ability to perform her past relevant work. Thereafter, the ALJ shall reassess Claimant's RFC.

### Claimant's Past Relevant Work

Claimant next takes issue with the ALJ's ultimate conclusion that she can perform her past relevant work as a tax preparer. Before a proper assessment of Claimant's ability to perform this work can be developed, the ALJ must consider all relevant evidence, including each restriction proffered by Dr. Hamilton, and assess Claimant's RFC based upon the evidence. After the reevaluation of

Claimant's RFC, the ALJ shall follow the three-step process for evaluating whether Claimant can perform her past relevant work. See, <u>Winfrey v. Chater</u>, 92 F.3d 1017, 1023 (10th Cir. 1996).

## Conclusion

The decision of the Commissioner is not supported by substantial evidence and the correct legal standards were not applied. Therefore, the Magistrate Judge recommends for the above and foregoing reasons, the ruling of the Commissioner of Social Security Administration should be **REVERSED and the matter REMANDED** for further proceedings consistent with this Order. The parties are herewith given ten (10) days from the date of the service of these Findings and Recommendations to file with the Clerk of the court any objections, with supporting brief. Failure to object to the Findings and Recommendations within ten (10) days will preclude appellate review of this decision by the District Court based on such findings.

DATED this 6th day of February, 2009.

KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE